## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**10/17/2014**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **MICHAEL GLYN BROWN,** | § | **Case No. 13-35892-H4-7** |
| **LIONHEART COMPANY, INC.,** | § | **Case No. 13-36390-H4-7** |
| **CASTLEMANE, INC.,** | § | **Case No. 13-36407-H4-7** |
| **PRORENTALS, INC.,** | § | **Case No. 13-36408-H4-7** |
| **SUPERIOR VEHICLE LEASING CO., INC., and** | | **Case No. 13-36410-H4-7** |
| **MG BROWN COMPANY, LLC,** | | **Case No. 13-36411-H4-7** |
| **Debtors** | | **Jointly Administered under Case No. 13-35892-H4** |

**MEMORANDUM OPINION ON: (1) TRUSTEE'S AMENDED OBJECTION TO CLAIM
NO. 137 FILED BY RACHEL BROWN, INDIVIDUALLY, AND AS NEXT OF FRIEND
FOR R----- BROWN AND M-- BROWN; AND (2) RACHEL BROWN'S AMENDED
APPLICATION FOR FAMILY ALLOWANCE AND ALLOWANCE IN LIEU OF
HOMESTEAD AND EXEMPT PROPERTY**
[Claim No. 137 and Doc. Nos. 1523 & 1608]

## I.    INTRODUCTION

This dispute, which involves both bankruptcy law and probate law, leads this Court to conclude that it has subject-matter jurisdiction to adjudicate the claim made by a debtor's widow against assets of the debtor's probate estate. Because the debtor's probate estate consists solely of exempt property, the Court necessarily concludes that it has jurisdiction to order the distribution of this property to the debtor's widow. The Court recognizes that there is ample case law holding that bankruptcy courts have no jurisdiction to adjudicate probate matters or claims against exempt property. *See, e.g.*, *In re Spiser*, 232 B.R. 669, 674 (Bankr. N.D. Tex. 1999); *In re Wilkinson*, 2012 WL 112945, at *5–6 (Bankr. S.D. Tex. 2012). Nevertheless, there are authorities giving this Court such jurisdiction under very narrow circumstances. These circumstances are present in the case at bar.

Specifically, this Opinion responds to the debtor's widow's claim to a family allowance based on probate law. She makes this claim against both the Debtor's Chapter 7 estate and his probate estate.[1] For the reasons stated herein, the Court concludes that: (1) it has jurisdiction to adjudicate claims made by the widow against both the debtor's bankruptcy estate and his probate estate; (2) it has the constitutional authority to enter a final order on all claims made by the widow against the bankruptcy estate; and (3) it does *not* have the constitutional authority to enter a final order on the claims that she makes against the debtor's probate estate, thereby requiring the undersigned judge to make a recommendation to the District Court on this requested relief. Accordingly, this Memorandum Opinion will be submitted to the District Court as the proposed Findings of Fact and Conclusions of Law relating to the undersigned bankruptcy judge's recommendation to the District Court on the widow's claims against the debtor's probate estate. Simultaneously, this Opinion is also issued as this Court's findings and conclusions for entering a final order on the docket regarding the widow's claims against the debtor's bankruptcy estate. For the reasons stated herein, this Court will enter a final order denying all of the widow's claims against the bankruptcy estate and recommending that her claims against the debtor's probate estate be granted in part and denied in part.

This Court makes its Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rules 7052 and 9014. To the extent that any Findings of Fact are construed as Conclusions of Law, they are adopted as such; and to the extent that any Conclusions of Law are construed as Findings of Fact, they are adopted as such. The Court reserves the right to make further findings and conclusions as it deems appropriate or as any party requests.

---

[1] The Applicant also claims that a family allowance could be paid out of the bankruptcies of special purpose entities related to the debtor's individual bankruptcy, [Finding of Fact No. 14]; this Court disagrees and will not allow assets from those bankruptcy estates to be used to pay the Applicant's claims for the same reasons that this Court will not allow the assets of the debtor's individual bankruptcy estate to be used to pay her claims.

## II.   FINDINGS OF FACT

1.  Before any of the legal proceedings at issue here began, Michael Glyn Brown ("the Debtor"), who was trained as a physician, was living in Houston with his wife, Rachel Brown, their two minor children, and a third child of Rachel's.  The Debtor owned a wildly successful group of hand surgery centers utilizing his patented hand surgery technique.  These centers generated annual revenues in the millions of dollars for many years.

2.  In August 2010, the Debtor and Rachel Brown separated.  [Doc. No. 174, p. 163].  Rachel Brown thereafter filed for divorce in Texas state court, and the suit was styled R.B. v. M.G.B., 309th Judicial District Court of Harris County, Texas, Case No. 2011-01272.  The divorce proceedings were extremely acrimonious and protracted.  Indeed, the Debtor and Rachel Brown had still not obtained a decree of divorce by the time that the Debtor died in November of 2013.  [*See* Finding of Fact No. 7].

3.  In 2012, the Debtor moved to Miami Beach, Florida.  [Doc. No. 223, p. 63].  By the time of his death in November of 2013 [*See* Finding of Fact No. 7], the Debtor owned multiple, high-end vehicles, plus a yacht with a value of several hundred thousand dollars, located in Florida.  [Doc. Nos. 888, 934, 968 & 969].

4.  On January 23, 2013, the Debtor filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida.  [Doc. No. 1].

5.  On April 2, 2013, the Debtor filed an amended Schedule C claiming real property located in Miami Beach, Florida, worth over $8 million, as his homestead.  [Doc. No. 223, p. 28].

6. On September 24, 2013, venue of the Debtor's Chapter 11 case was transferred to the Southern District of Texas, where it was assigned to the undersigned judge. [Doc. No 436].

7. On November 10, 2013, the Debtor died in Florida. [Doc. No. 799]. He left behind seven wills, naming various individuals (but not his wife) as executors; however, the validity of all of these wills is questionable and no one who is named as an executor in these wills has ever probated the will. [Courtroom Minutes, 12/04/2013, 2:30 p.m. & 12/19/2013, 11:30 a.m.]. As of today, no probate court has assumed jurisdiction over the Debtor's probate estate. Indeed, no probate proceeding has ever been initiated since the Debtor's death.

8. On November 12, 2013, this Court issued an order setting a hearing pursuant to Bankruptcy Rule 1016 to inquire if any creditor or party-in-interest wanted the case to be dismissed in the wake of the Debtor's death. [Doc. No. 800]. Numerous creditors and parties-in-interest appeared at this hearing and all of them (except one, who took no position) expressed the position that this bankruptcy case should not be dismissed but should proceed to allow the Trustee to administer the assets of the Debtor's bankruptcy estate. [Doc. No 930].

9. On November 20, 2013, this Court converted the Chapter 11 case to a Chapter 7 case. [Doc. No. 905]. Ronald J. Sommers ("the Trustee") became the trustee in this Chapter 7 case. [Courtroom Minutes, 11/21/2013, 9:00 a.m.].

10. On December 19, 2013, the Court appointed Judy Lenox ("Lenox") to act as a personal representative for the Debtor, deceased, in this Chapter 7 case. [Doc. No. 1021]. Lenox's role was expressly limited to a personal representative of the bankruptcy estate,

not the probate estate, and her role would come to an end after she had claimed exemptions on behalf of the deceased Debtor's probate estate and then defended those exemptions as necessary. [Courtroom Minutes, 12/04/2013, 2:30 p.m. & 12/19/2013, 11:30 a.m.]. Lenox has no authority to distribute any assets of the probate estate without first obtaining this Court's approval.

11. On February 28, 2014, Lenox filed an Amended Schedule C claiming real property located in Houston, Texas as the Debtor's homestead. [Doc. No. 1238].

12. On March 6, 2014, Lenox filed an Amended Schedule C claiming as exempt property: (1) $45,000 in lieu of a homestead, (2) $60,000 in lieu of exempt personal property, (3) two "Interest in Education" IRAs valued at $37,080 each, and (4) an IRA account at JP Turner & Co. valued at $319,080. [Doc. No. 1262]. The change to the "in lieu of" designation was made because there was no equity in the Houston real property that Lenox had previously designated as the Debtor's homestead. [Doc. No. 1928, p. 4]. The Trustee objected to the exemption of $45,000 in lieu of a homestead and to the IRA account at JP Turner & Co. [Doc. No. 1411]. The Court thereafter sustained the Trustee's objection. [Doc. No. 1878]. Thus, the only liquid assets currently in the Debtor's probate estate are the $60,000 in lieu of exempt personal property. [Stipulation by parties at the hearing held on October 16, 2014]. After this Court appointed Lenox to act as the personal representative of the Debtor, deceased, in this Chapter 7 case, the Trustee, with this Court's approval, transferred $60,000 out of the bankruptcy estate to Lenox. [Doc. Nos. 1930 & 2035]. Lenox has no authority to distribute all or any portion of this $60,000 without first obtaining this Court's approval.

13. On March 10, 2014, Rachel Brown filed a proof of claim, with the amount "as of Date Case Filed" listed as $571,080 and the "Basis for Claim" listed as "Family Allowance Administrative Claim – Based on Probate." [Claim No. 137]. On the proof of claim form, the Applicant designated the claim as a "[d]omestic support obligation[] under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)." [Claim No. 137]. The Trustee filed an objection to Claim No. 137 on March 31, 2014 [Doc. No. 1411], which he amended on April 29, 2014, [Doc. No. 1523] ("POC Objection").

14. On April 29, 2014, Rachel Brown (hereinafter referred to as the "Applicant")[2] filed an Application for Family Allowance and Allowance in Lieu of Homestead and Exempt Property [Doc. No. 1526], which she amended on May 14, 2014 [Doc. No. 1608] ("Application for Family Allowance" or "Application"). The Application separates the $571,080 claim into a $496,080 claim for a family allowance under Texas Estates Code § 353.101, a $45,000 claim for an allowance in lieu of homestead under Texas Estates Code § 353.053, and a $30,000 claim for an allowance in lieu of exempt personal property under Texas Estates Code § 353.053.[3] [Doc. No. 1608]. The Applicant expressly asserts in the Application that her claim should be paid out of the bankruptcy estate and the probate estate, and, if necessary, out of the bankruptcy estates of various business entities associated with the Debtor. [Doc. No. 1608, ¶ 32] ("The family allowance is to be paid out of the assets of the estate, both exempt and non-exempt. . . . . Additionally, the Trustee should be able to use the assets from the special purpose

---

[2] Rachel Brown remarried on August 1, 2014 and is now Rachel Bagwell.

[3] This Court's ruling on the Applicant's claims against the bankruptcy estate are separate and distinct from this Court's rulings on Lenox's claimed exemptions, as those exemptions were not claimed by the Applicant but were claimed on behalf of the deceased Debtor. This Opinion, by contrast, resolves which of the assets exempted out of the bankruptcy estate to the probate estate of the deceased Debtor may be subsequently passed along to the Applicant and her minor children.

bankruptcies . . . ."). She does not state whether the claims should be paid first out of the bankruptcy estate and next out of the probate estate, or vice versa.

15. On May 20, 2014, the Trustee objected to the Application for Family Allowance. [Doc. No. 1639] ("Trustee's Objection"). On June 3, 2014, the Applicant filed a brief in support of the Application [Doc. No. 1692] and the Trustee filed a reply brief on the same day [Doc. No. 1693].

16. On June 4 and July 9, 2014, the Court held a simultaneous hearing on the POC Objection and the Application for Family Allowance. The Applicant presented a household budget of $41,340 per month in support of her family allowance claim, which included expenses for house payments; utilities; housekeeping, lawn care and extermination services; health insurance; medical expenses; groceries and household items; private school tuition and tutoring; entertainment; gym fees; clothing; pet care; and transportation. At the close of the hearing, the Court took the matter under advisement.

## III.   CREDIBILITY OF WITNESSES

Four witnesses testified at the hearing: (1) the Trustee; (2) the Applicant; (3) Jessica Khurana, a jewelry appraiser, and (4) Jimmy Williamson, the Applicant's malpractice attorney, who is prosecuting a suit for Applicant against her former attorneys in the divorce proceeding. The Court finds that these witnesses gave credible testimony and the Court gives substantial weight to their testimony. However, for the most part, the only relevant and material testimony came from the Applicant, who testified about her household budget. [*See* Finding of Fact No. 16].

## IV.   CONCLUSIONS OF LAW

### A. Summary of this Court's Rulings

Before the Court are the filings related to the Applicant's Claim No. 137 and the Application for Family Allowance, both of which request $571,080 for a family allowance, an allowance in lieu of homestead, and an allowance in lieu of exempt property under Texas probate law. [Claim No. 137 and Doc. Nos. 1523 & 1608]. The Applicant does not seek to recover more than $571,080, and she does not state, one way or the other, whether the $571,080 should come from the probate estate or the bankruptcy estate. [Finding of Fact No. 14]. As there is only $60,000 available in the Debtor's probate estate with which to potentially pay the Applicant's claims, [Finding of Fact No. 12], bankruptcy estate assets would necessarily be required to pay her claims in full. Her position is that she is entitled, as a matter of law, to recover from either or both of these estates.

This Court concludes that Claim No. 137 must be denied in its entirety because it is not cognizable against the Debtor's bankruptcy estate, which is a separate pool of assets from the Debtor's probate estate. This Court also concludes that the portion of the Application seeking payment from the bankruptcy estate must be denied. This Court further concludes that it has jurisdiction to adjudicate the Application for Family Allowance out of assets of the Debtor's probate estate. The Debtor's probate estate consists solely of property exempted out of the bankruptcy estate, which in this case is exclusively personal property. Because the Debtor was domiciled in Florida at the time of his death, Florida law, not Texas law, governs the succession of his personal property. Under Florida law, the family allowance for a surviving spouse is limited to $18,000. Florida law, unlike Texas law, does *not* provide for allowances in lieu of exemptions. This Court will thus enter a final order denying all of the Applicant's claims against

the Debtor's Chapter 7 estate; and will submit a proposed order to the District Court recommending that the Applicant receive a payment of $18,000 from the Debtor's probate estate.

### B. Analysis of the POC Objection

#### i.    Jurisdiction, Venue, and Constitutional Authority

This Court has jurisdiction over the POC Objection pursuant to 28 U.S.C. §§ 1334(a) and 157(a) because objections to proofs of claim are matters "arising in" bankruptcy. The POC Objection is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (" matters concerning the administration of the estate"); (b)(2)(B)(" allowance or disallowance of claims against the estate . . ."), and (b)(2)(O) ("other proceedings affecting . . . adjustment of the debtor-creditor . . . relationship . . .").[4]   Venue is proper pursuant to 28 U.S.C. § 1408(1).   This Court has constitutional authority to enter a final order on Claim 137 because "the action . . . stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 131 S. Ct. 2594, 2618, 180 L. Ed. 2d 475 (2011).   As a claim against the Debtor's bankruptcy estate, Claim No. 137 directly stems from the bankruptcy, and the adjudication of the POC Objection will necessarily resolve whether Claim No. 137 is an allowed claim. *See In re H & M Oil & Gas, LLC*, 514 B.R. 790, 799–800 (Bankr. N.D. Tex. 2014) (finding the bankruptcy court had both statutory and constitutional authority to enter a final order on the trustee's objection to an administrative claim).

#### ii.   Claim 137 must be denied because it is a claim against the probate estate, not the bankruptcy estate.

Claim No. 137 must be denied because it is not a claim against the bankruptcy estate, but rather against the Debtor's probate estate.

---

[4] "Although we have declined to read § 157(b)(2)(O) broadly, *see Wood*, 825 F.2d at 95, we have also not hesitated to apply it in proceedings falling within the plain meaning of the statutory text." *In re U.S. Brass Corp.*, 301 F.3d 296, 306 n. 33 (5th Cir. 2002) (citing *Matter of Wood*, 825 F.2d 90, 95 (5th Cir. 1987)).

The death of a debtor results in two entirely separate estates: the bankruptcy estate and the probate estate. *In re Lucio*, 251 B.R. 705, 709 (Bankr. W.D. Tex. 2000). This division was specifically addressed in the legislative history to the Bankruptcy Code: "[I]f the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate." H.R. Rep. No. 95-595, at 368 (1978); S. Rep. No. 95-989, 83 (1978). Here, the only property in the Debtor's probate estate is property exempted from this bankruptcy estate, since property acquired by an individual Chapter 11 debtor after commencement of the case is now included as property of the bankruptcy estate.[5] *See* 11 U.S.C. § 1115(a)(2) (defining property of the estate for an individual in Chapter 11 to include property "that the debtor acquires after the commencement of the case").

The claims allowance process in bankruptcy provides for the orderly allocation of property of the bankruptcy estate. Specifically, in a case under Chapter 7, such as the case at bar, the claims allowance process provides for distribution of a debtor's bankruptcy estate, in order of priority, to claimants who have submitted a proof of claim under Section 501 to the extent allowed under Section 502. 11 U.S.C. § 726. Section 502 provides generally that claims shall be allowed unless challenged. *Id.* § 502(a). However, if an objection is raised to a claim, the bankruptcy court shall determine the amount of the claim as of the petition date and shall generally allow it "except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *Id.* § 502(b)(1). Section 348 of the Bankruptcy Code provides that "[a] claim against the estate or the debtor that arises

---

[5]As distinguished from the pre-2005 law, under which property of the estate for an individual in a Chapter 11 case did *not* include any property that the debtor acquired post-petition. *See In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013) (citing the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." *Id.* § 348(d).

Here, Claim No. 137, since it is based in probate, arose when the Debtor died—after the order for relief in the Debtor's Chapter 11 bankruptcy, but before the case was converted to a Chapter 7 under Section 1112. [Findings of Fact Nos. 4, 7, 9]. Therefore, this Court finds that Claim No. 137 should be treated as a prepetition claim under Section 348(d). However, Claim No. 137 is only allowable to the extent it is enforceable under applicable law. *Id.* § 502(b)(1). The Applicant, in her Claim No. 137, expressly states in Section 2 (requiring her to state the basis for the claim) that the claim is based on probate law. [Finding of Fact No. 13]. As discussed *infra*, this Court holds that Florida law controls the issue of any probate allowances owed to Applicant. The applicable Florida law only provides for an allowance to be paid from the decedent's *probate estate*. *See* Fla. Stat. Ann. § 732.403 (providing that "if the decedent was domiciled in Florida at the time of death, the surviving spouse and the decedent's lineal heirs . . . are entitled to a reasonable allowance in money *out of the estate* . . . .") (emphasis added); *Id.* § 731.201(14) (defining "estate," as used in Florida's probate code, as "property of a decedent that is the subject of administration"). The Applicant cites no support for an obligation enforceable against the Debtor's *bankruptcy estate*.

Under applicable law, therefore, Claim No. 137 is only enforceable against the Debtor's probate estate, which is entirely separate from his bankruptcy estate. *See* Fla. Stat. Ann. § 731.201(14), 732.403. Thus, Claim No. 137 is not enforceable against the Debtor's bankruptcy estate. The claims allowance process in Chapter 7 provides for distribution out of only a

debtor's bankruptcy estate. *See* 11 U.S.C. § 726(a) (setting forth the order in which claims shall be distributed from "property of the estate"). Therefore, as a proof of claim submitted under Section 501, Claim No. 137 must be denied under Section 502 in its entirety as unenforceable against the assets distributed through the claims allowance process—the Debtor's bankruptcy estate.

The Applicant's assertion that Claim No. 137 should be treated as a domestic support obligation (DSO) does not change this result. [Finding of Fact No. 13]. Indeed, Claim No. 137 does not meet the definition of DSO provided in the Bankruptcy Code. *See* 11 U.S.C. § 101(14A). The Bankruptcy Code defines "domestic support obligation" as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is—
> **(A)** owed to or recoverable by—
> **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or a governmental unit;
> **(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child . . . , without regard to whether such debt is expressly so designated;
> **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> **(i)** a separation agreement, divorce decree, or property settlement agreement;
> **(ii)** an order of a court of record; or
> **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> **(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Id.* Here, the family allowance provided by Florida probate law meets three of the four statutory DSO requirements, but is not "subject to establishment . . . by reason of applicable provisions of . . . an order of a court of record" or any other agreement or determination. Section 101(14A)(C) of the Bankruptcy Code expressly requires a creditor submitting a DSO claim to refer to

provisions of an agreement, decree, court order, or governmental determination of the debt. The Applicant does not reference any of these in regard to Claim 137, and therefore Claim 137 does not meet the definition of a DSO claim. The Applicant's reference to statutory provisions is simply insufficient under the plain language of Section 101(14A)(C) to establish a DSO. To establish a DSO for the requested allowances, the Applicant would have needed to obtain an order from a court of record, which she has not done.[6]

For all of these reasons, this Court concludes that the POC Objection should be sustained in its entirety and that Claim No. 137 should be completely disallowed.

## C. Analysis of the Application for Family Allowance

### i.  Jurisdiction, Venue, and Constitutional Authority

The Applicant requests that the family allowance and allowances in lieu of exempt property be paid from both the Debtor's probate estate and the Debtor's bankruptcy estate. [Finding of Fact No. 14]. There is no question that this Court has jurisdiction to determine whether funds from the Debtor's Chapter 7 estate can be used to pay the allowance requested by the Applicant, and that this Court has the constitutional authority to enter a final order regarding its ruling. *See, e.g., In re 1701 Commerce, LLC*, 511 B.R. 812, 816 (Bankr. N.D. Tex. 2014) ("The court has constitutional authority to enter a final order because determining the Objection involves the quintessential claims allowance process."). For the same reasons as set forth above regarding Claim No. 137, the Applicant's request for her claim to be paid from bankruptcy estate funds is denied: to reiterate, her claims, under the law upon which they are based, are only

---

[6]For example, if the Applicant had in fact obtained an order from a probate court, granting her "maintenance" or "support" that fits within the definition of a DSO, then she would have satisfied the requirement of Section 101(14A)(C)(ii). Unfortunately, no probate proceeding has ever been initiated since the Debtor's death for the Applicant to be able to obtain such an order. [Finding of Fact 7].

payable out of the Debtor's probate estate, and therefore may not be paid out of the Debtor's separate and distinct bankruptcy estate.

There is a question, however, whether this Court has jurisdiction to adjudicate, and constitutional authority to enter a final order granting, the requested allowance from the Debtor's probate estate. For the foregoing reasons, this Court concludes that it has jurisdiction to adjudicate the issue, but not the constitutional authority to enter a final order; and therefore this Court must make a recommendation to the District Court.

Venue is proper pursuant to 28 U.S.C. § 1408(1).

### a. This Court has jurisdiction to adjudicate the Applicant's claims against the Debtor's probate estate.

This Court has a "duty to raise *sua sponte* the question of federal subject matter jurisdiction over this action." *Christoff v. Bergeron Indus., Inc.*, 748 F.2d 297, 298 (5th Cir. 1984). After a careful consideration of its jurisdiction over probate matters, this Court concludes that it has jurisdiction over the Debtor's probate estate for the purpose of adjudicating the Application for Family Allowance. After discussing *sua sponte* this jurisdictional issue, the Court next addresses the Trustee's two objections to this Court's jurisdiction. First, the Trustee asserts that the Texas probate courts, or alternatively the Florida circuit courts, have exclusive jurisdiction over probate matters. Second, the Trustee argues that the Application falls within the judicially created "probate exception" to federal jurisdiction. This Court rejects both of these arguments, finding that: (1) to the extent state statutes restrict this Court's jurisdiction, they are preempted by the applicable conflicting federal law; and (2) the probate exception does not apply because no probate proceedings have been instituted since the Debtor died.

14

i)   **28 U.S.C. § 1334(e)(1) grants this Court *in rem* jurisdiction over "all the property . . . of the debtor."**

As the Supreme Court has emphasized, "[b]ankruptcy jurisdiction "at its core, is *in rem*." *Cent. Va. Cmty. Coll. v. Katz,* 546 U.S. 356, 362 (2006). *In rem* jurisdiction is a court's jurisdiction to determine rights in property in the court's possession, known as the *res*. *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012). *In rem* bankruptcy jurisdiction is premised on the bankruptcy court's possession of the bankruptcy estate, *id.*, which initially includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including exempt property, 11 U.S.C. § 541(a)(1). Consequently, Section 1334(e)(1) vests district courts with "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of [the bankruptcy] case, and of property of the estate." 28 U.S.C. § 1334(e)(1). 28 U.S.C. § 157(a) then provides for the district court's referral of bankruptcy cases to bankruptcy courts.[7]

That the initial *res* includes exempt property is no accident, but was a deliberate legislative change to clarify that bankruptcy courts have jurisdiction over exempt property—at least to the extent necessary to set it aside. *See* H.R. Rep. No. 95-595, at 368 (1978).

The original statutory definition of the bankruptcy estate specifically excluded exempt property. Bankruptcy Act of 1898, ch. 541, § 70, 30 Stat. 544, 565–66 ("The trustee of the estate of a bankrupt . . . shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, *except in so far as it is to property which is exempt . . . .*") (emphasis added). Consequently, in 1903 the Supreme Court held that bankruptcy courts did not have jurisdiction to determine whether a debtor had waived exemptions, because property that

---

[7]In the Southern District of Texas, General Order No. 2012-6 is the order of referral that automatically refers cases to the bankruptcy court.

was "generally exempted" had never been part of the bankruptcy court's *res*. *Lockwood v. Exch. Bank of Ft. Valley*, 190 U.S. 294, 298–99 (1903).

Notwithstanding the Supreme Court's decision in *Lockwood*, courts have long recognized bankruptcy jurisdiction over exempt assets at least to the extent of determining what property qualifies as exempt and setting that property aside. *See, e.g.*, *Kronstadt v. Citizens & S. Nat. Bank of Savannah*, 80 F.2d 260, 263–64 (5th Cir. 1935) (holding that the bankruptcy court had jurisdiction to determine whether the debtor had effectively assigned his exemption to a creditor and to set aside the exempt property to the creditor). Thus, in the Fifth Circuit, *Lockwood* primarily came to stand for the proposition that a bankruptcy court has no jurisdiction over exempt property "after the designated property has been set apart and the question of its exemption *vel non* determined." *Leiter v. Steinbach*, 184 F.2d 751, 753 (5th Cir. 1950); *see also Novak v. O'Neal*, 201 F.2d 227, 230 (5th Cir. 1953) ("[W]hen such exemption is claimed and set apart its content is of no further concern to the court of bankruptcy and is not subject to administration by the court.").

It is in this context that Congress changed the definition as part of the Bankruptcy Reform Act of 1978, clarifying the scope of bankruptcy court jurisdiction over exempt property. Pub. L. 95-598, 92 Stat. 2683 (1978) (the Bankruptcy Reform Act). The legislative history indicates that the expanded definition was intended to overrule *Lockwood* to the extent it held bankruptcy courts did not have jurisdiction to determine and set aside exempt property:

> Paragraph (1) [of Section 541] has the effect of overruling *Lockwood v. Exchange Bank*, because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. 522 and the Court will have jurisdiction to determine what property may be exempted and what remains as property of the estate.

H.R. Rep. No. 95-595, at 368 (1978) (citation omitted). However, the expanded definition of property of the estate could be, and has been, interpreted as an even greater expansion of bankruptcy court jurisdiction over exempt property. *See In re Gagnard*, 17 B.R. 811, 813 (Bankr. W.D. La. 1982). In *Gagnard*, after personal property was exempted from the Chapter 7 debtor's bankruptcy estate and the debtor received a discharge, a creditor challenged the exemptions in state court. *Id.* at 812. The bankruptcy court held that the challenge must be brought in bankruptcy court because the bankruptcy court had exclusive jurisdiction over the exempt property as "property of the debtor." *Id.* at 813. The *Gagnard* court reasoned:

> [E]ven though exempt property is initially considered as property of the estate, when the exemption is upheld, it becomes property of the debtor. . . . However, this does not mean that the Bankruptcy Court no longer has jurisdiction. . . . [T]he Court has jurisdiction over any type of proceeding under Title 11 and over the property of the debtor. This Court has found no indication that Congress intended the Court to lose jurisdiction over property held to be exempt, but instead finds every indication that the Court maintains jurisdiction.

*Id.* However, it is not at all clear that the Bankruptcy Reform Act overruled Fifth Circuit precedent that bankruptcy courts do not have jurisdiction over exempt property once it has been set aside. *See Novak*, 201 F.2d at 230; *Leiter*, 184 F.2d at 753. Further, *Gagnard*'s holding that *in rem* bankruptcy jurisdiction extended past the close of the underlying bankruptcy case is not good law, at least not in the Fifth Circuit. *See Matter of Querner*, 7 F.3d 1199, 1202 n.3 (5th Cir. 1993).

In sum, as the Fifth Circuit noted in 1950, defining the "precise extent" of bankruptcy courts' *in rem* jurisdiction over exempt assets may be a "fruitless, if indeed not impossible" exercise. *Leiter*, 184 F.2d at 753. However, it is clear that the bankruptcy court has jurisdiction to determine and set aside exempt property to the proper party, *see Kronstadt*, 80 F.2d at 263–64,

and that bankruptcy jurisdiction over exempt property expanded with the Bankruptcy Reform Act of 1978.

> **ii)    While initially restricting bankruptcy court jurisdiction over exempt assets, the Supreme Court expressly held that bankruptcy courts should order payment of family allowances out of the bankruptcy estate.**

To address the Application fully, this Court must consider not only the scope of its jurisdiction over exempt property, but relevant authorities on how to proceed when a debtor dies in bankruptcy. A mere twelve years after it restrictively interpreted bankruptcy court jurisdiction over exempt assets in *Lockwood*, the Supreme Court addressed this very issue in *Hull v. Dicks*, 235 U.S. 584. In *Hull*, the Supreme Court held that a bankruptcy court could grant a family allowance to a debtor's widow out of bankruptcy estate assets. *Id.* at 588. The Supreme Court based its holding on Section 8 of the Bankruptcy Act, the provision allowing for continuation of bankruptcy proceedings after the death of the debtor. *Id.* at 587–88. Section 8 specifically provided that the death of a debtor shall not abate a bankruptcy proceeding, but that the debtor's family "shall be entitled to all rights of dower and allowance." *Id.* at 588–89 (quoting Bankruptcy Act of 1898, ch. 541, § 8, 30 Stat. 544, 549).

With the Bankruptcy Reform Act of 1978, the specific provision on which the *Hull* court relied was deleted from the Bankruptcy Code. The legislative history makes clear that the deletion of this provision was not intended to effect substantive change, but states that "Bankruptcy Act § 8 . . . has been deleted as unnecessary." H.R. Rep. No. 95-595, at 368 (1978); S. Rep. No. 95-989, at 83 (1978). However, it is this very paragraph of legislative history that recognizes the distinction between a debtor's bankruptcy estate and a debtor's probate estate discussed *supra*:

> Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the estate . . . ."

*Id.* The issue of the death of a debtor is also currently addressed in Bankruptcy Rule 1016, which reads:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Fed. R. Bankr. P. 1016.[8]

Thus, this Court is faced with the difficult task of determining how much the Supreme Court's holding that bankruptcy courts should pay family allowances out of the bankruptcy estate has changed in wake of the subsequent case law and legislative reforms. This Court concludes that to the extent *Hull* requires bankruptcy courts to pay family allowances out of bankruptcy estate assets, it has been overruled, but to the extent it requires bankruptcy courts to pay family allowances as part of setting aside a debtor's exempt assets, it must be followed. In this Court's view, the key to this conclusion is the bankruptcy court's *in rem* jurisdiction to determine and set aside exempt assets from the bankruptcy estate.

---

[8] In fact, after the Debtor died, this Court issued an order setting a hearing requesting all creditors and parties-in-interest to appear and inform the Court whether they wanted the Debtor's case to be dismissed or to be continued. [Finding of Fact No. 8]. At the hearing, numerous creditors and parties-in-interest appeared (including the Applicant), and all of them (except one, who took no position) expressed the position that this bankruptcy case should not be dismissed but should proceed to allow the Trustee to continue to fulfill his duties in this bankruptcy case. [Finding of Fact No. 8].

Both Section 8 of the Bankruptcy Act, which controlled when the Supreme Court in *Hull* held that a bankruptcy court could grant a family allowance out of bankruptcy assets, and current Bankruptcy Rule 1016 express the intention that a deceased debtor's bankruptcy estate be administered, as much as possible, as if the debtor were still alive.

When a debtor dies, the bankruptcy court, in acting as much as possible as though the debtor had not died, must still "set aside" the exempt property to the appropriate recipients. Even the most limited interpretations of *in rem* bankruptcy court jurisdiction under the old, narrower definition of property of the estate do not hold that bankruptcy courts lack jurisdiction to determine and set aside exempt assets. *See Novak*, 201 F.2d at 230; *Leiter*, 184 F.2d at 753. Therefore, under the expanded *in rem* jurisdiction of bankruptcy courts over exempt assets clarified by the definition of property of the estate under the existing Bankruptcy Code, there is no question that bankruptcy courts have this authority. In the instant dispute, this Court remains in possession of the Debtor's exempt assets—which comprise the Debtor's probate estate— because there is no executor or probate court to which this Court could set them aside and entrust them. [Finding of Fact No. 7]. Indeed, this Court had to appoint Lenox to serve as the personal representative of the Debtor, deceased, in this Chapter 7 case, because of the virtual impossibility of any individual named as an executor in any of the Debtor's wills taking the initiative to institute a probate proceedings. But, Lenox's role is expressly limited to claiming exemptions on behalf of the deceased Debtor's probate estate and then defending these exemptions, as necessary. [Finding of Fact No. 10]. She has no authority to distribute any or all of the probate estate assets—which are the $60,000 in cash—without this Court's approval.

Though this Court's jurisdiction over exempt assets after they have been set aside is arguable, as long as this Court is in possession of these assets, it is—like the court in

*Kronstadt*—within its jurisdiction to set aside the exempt property to someone besides the Debtor with good reason. Since this probate estate property is within this Court's jurisdiction, this Court finds that *Hull v. Dicks* and the legislative history concerning deceased debtors require it to grant the family allowance to the Applicant to the extent allowable under state law.

### iii) The Fifth Circuit has held that a bankruptcy court may allocate a deceased debtor's probate assets that are separate from the bankruptcy estate.

Furthermore, the Fifth Circuit has specifically recognized the jurisdiction of bankruptcy courts to allocate property of a deceased debtor's probate estate. *See Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993). In *Querner*, while a Chapter 13 bankruptcy case was open, the bankruptcy court appointed an intermediary to resolve disputes over probate property. *Id.* at 1200. When the probate disputes were still not resolved after the Chapter 13 case was closed, the bankruptcy court made direct allocations of the probate property. *Id.* at 1200–01. In deciding that the bankruptcy court abused its discretion in retaining jurisdiction over the probate estate after the bankruptcy case was closed, the Fifth Circuit noted that the bankruptcy court "clearly" had jurisdiction over probate assets while the case was open. *Id.* at 1202. The Fifth Circuit cited both the bankruptcy court's exclusive *in rem* jurisdiction over property of the debtor and the fact that the probate disputes were "related to" the bankruptcy:

> In the instant case, the bankruptcy court clearly had jurisdiction over matters affecting the deceased debtor's estate while the Chapter 13 case was proceeding. The court had discretion under Bankruptcy Rule 1016 to continue the Chapter 13 case after the death of the debtor, and it had exclusive jurisdiction over the debtor's property during the pendency of these proceedings. Because ongoing disputes during the active reorganization of the debtor's estate could conceivably have affected the handling and administration of the bankruptcy estate, the court's initial appointment of an intermediary to resolve disputes over the disposition of the deceased debtor's assets was "related to" the Chapter 13 case.

21

*Id.* at 1201. Granted, this language is dicta, but it is very strong dicta that this Court finds persuasive in analyzing the dispute at hand.

In the case at bar, there is no question that the Debtor's Chapter 7 case remains open. Under *Querner*, this fact alone provides the basis for this Court to exercise jurisdiction over the Debtor's probate estate. That this Court can exercise jurisdiction over the Debtor's probate estate is even more compelling when the facts in *Querner* are compared to the facts here. In *Querner*, the dispute adjudicated by the bankruptcy court (which the Fifth Circuit would have approved if the bankruptcy case had not already been closed) was between one non-debtor (the deceased debtor's daughter) and another non-debtor (the deceased debtor's son). Here, the dispute is between the Trustee (who is administering the Chapter 7 estate of the deceased Debtor) and the Applicant (who is the widow of the Debtor). Surely, if the Fifth Circuit has no problem with the bankruptcy court exercising jurisdiction to adjudicate a dispute over division of probate assets between the deceased debtor's children, the Fifth Circuit would approve of this Court adjudicating the dispute at bar between the Trustee and the Debtor's widow.

### iv) The Fifth Circuit has held that bankruptcy courts are obligated to grant family allowances not being resolved in probate court.

*Querner* illustrates the considerations that are relevant to close questions of bankruptcy court jurisdiction over probate matters. An earlier Fifth Circuit case provides guidance on how these factors apply to the specific issue of family allowances. *See Seiden v. Southland Chenille', Inc.*, 195 F.2d 899 (5th Cir. 1952).

In *Seiden*, the Fifth Circuit addressed the question of whether a bankruptcy court could distribute a family allowance to the widow of a part-owner of a corporate debtor, even assuming her state court judgment for the allowance was invalid. The majority left no doubt that the

bankruptcy court had jurisdiction to grant the allowance, despite the dissent's point that it "must be set aside out of the estate of the deceased husband." *Id.* at 905 (Russell, J., dissenting). The majority reasoned that the inherent equitable powers of the bankruptcy court allowed it to determine and order distribution of the family allowance under the applicable state law, declaring that "[e]quity never does things by halves, and neither does bankruptcy." *Id.* at 901. Indeed, the Fifth Circuit left no doubt that the bankruptcy court was obligated to act, proclaiming: "It would be unconscionable for a court of bankruptcy, upon the death of the husband, to take possession of all his assets without setting aside his exempt property to those entitled to it, and without allowing the widow a year's support, in accordance with state law." *Id.*

According to the *Seiden* court, the immediacy of the family allowance request triggered the bankruptcy court's equitable jurisdiction:

> The trustee in bankruptcy need not await the action of probate proceedings, which have not been and may never be instituted; nor must he file a bill in the nature of interpleader in some other court to dispose of a res in the legal custody of the court that appointed him. . . . The bankruptcy court will not interfere with the settlement of an estate, except to aid the jurisdiction of a probate court in a matter where its powers are inadequate; but no probate proceedings are pending in the state of decedent's residence, and none is necessary or even possible under the admitted facts.   To warrant such proceedings, there must be an estate to administer within the jurisdiction of the court.   Where ground for equitable interposition is established, a court of equity will in innumerable instances take jurisdiction of controversies involving decedents' estates and the rights of creditors.

*Id.* at 903. *Id.* The Fifth Circuit left no doubt that the bankruptcy court could and should grant the allowance, declaring: "If the intervention of a bankruptcy proceeding prevents appropriate action by the state court having jurisdiction, then the bankruptcy court, which exercises equitable

jurisdiction, *should act, and do that which ought to have been done.*" *Id.* at 901 (emphasis added).[9]

Like the bankruptcy court in *Seiden*, this Court has an obligation to act to award a family allowance that cannot or is not being resolved in state court. In *Seiden,* the Fifth Circuit was forced to address the bankruptcy court's duty to act because the probate court's judgment may have been invalid, and to do nothing would have undermined a principal public policy of quickly providing for spouses and their minor children after the death of a decedent. The obligation of this Court to intervene is even stronger than in *Seiden*, as in the instant case there is not even a question whether a valid state judgment exists—no probate proceeding has ever been instituted! [Finding of Fact No. 7]. And, given the questionable validity of the myriad wills left by the Debtor [Finding of Fact No. 7], it is readily apparent that no will will ever be probated. And, perhaps most important, like the widow in *Seiden*, who had a minor son, *id.* at 905, the widow here (i.e. the Applicant) has three minor children for whom she must care. The equities of this case therefore weigh even more heavily toward bankruptcy court action, particularly when one considers the delay the Applicant and her three children have already faced in the protracted and acrimonious divorce proceedings, [Finding of Fact No. 2], and would inevitably face if forced to initiate an independent administration proceeding in state court.

In sum, applicable Fifth Circuit case law, expressly addressing when a bankruptcy court has jurisdiction over a probate estate, in addition to the language of 28 U.S.C. § 1334(e)(1)—and the case law interpreting this provision—lead this Court to conclude that it has subject matter

---

[9] The Fifth Circuit elaborated: "Therefore, although the husband is not in bankruptcy, all of his assets are, and no state court can acquire jurisdiction of them. The law never requires the doing of an idle thing, and what a hard proceeding it would be for a bankruptcy court to distribute the physical assets of a corporation, without hearing interested parties [such as the widow] because some probate court had not set aside to them a stock certificate that was speedily being rendered worthless by the omnivorous jurisdiction of bankruptcy . . . . *In these circumstances, a court of equity [i.e. the bankruptcy court] will pierce the corporate veil, and administer the state law with even-handed justice.*" *Id.* at 903 (emphasis added).

jurisdiction over the Debtor's probate estate. The question now is whether the Trustee's specific objections to jurisdiction have any merit.

> **v)   The Trustee's two objections to this Court's jurisdiction are unavailing.**

The Trustee raises two specific objections to this Court's jurisdiction over the Debtor's probate estate, neither of which are availing: (1) Texas Estates Code § 502.001, or alternatively, Florida Statute § 26.012(2)(b), grants exclusive jurisdiction of the Debtor's probate esate to state courts; and (2) granting a family allowance falls within the judicially created "probate exception" to federal jurisdiction.

> **1.   To the extent state law restrict this Court's jurisdiction, it is preempted by federal bankruptcy law.**

The Trustee's first argument fails because state jurisdictional statutes are preempted to the extent they conflict with federal jurisdictional statutes. *See Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 127–28 (1937) ("state laws in conflict with the laws of Congress on the subject of bankruptcies are suspended . . . to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress."). Under the doctrine of implied preemption, federal law preempts state law that "conflicts with federal law or interferes with the achievement of federal objectives." *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004) (internal quotation omitted); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). Here, federal law vests this Court with jurisdiction to adjudicate the issue as to whether the Applicant's family allowance request should be paid from the Debtor's probate estate. *See* 28 U.S.C. § 1334(e)(1); *Querner*, 7 F.3d at 1201; *Seiden*, 195 F.2d 899 at 901, 903. If either Texas Estates Code § 502.001 or Florida Statute § 26.012(2)(b) is interpreted to restrict this Court's jurisdiction, then they are in direct conflict with the federal authorities cited above

granting this Court jurisdiction over the Debtor's probate assets, as discussed *supra*. The doctrine of implied conflict preemption therefore prevents the Texas Estates Code and the Florida Probate Code from divesting this Court of jurisdiction.

### 2. The "probate exception" does not bar jurisdiction in this case.

Finally, the "probate exception" to federal jurisdiction does not apply in this case. The "probate exception" is based on a now-contested view of the scope of jurisdiction of the English Court of Chancery at the time the Judiciary Act was passed in 1789. *See Marshall*, 547 U.S. at 315–16 (Stevens, J., dissenting). In 1946, the Supreme Court held that because probate matters were outside the purview of English courts when Article III courts were created, they were outside the purview of federal courts. *Markham v. Allen*, 326 U.S. 490, 494 (1946). However, since this pronouncement, the Supreme Court has questioned the historical basis and therefore the existence of the exception. *See Marshall v. Marshall*, 547 U.S. 293, 308–09 (2006) ("[The instant] claim falls far outside the bounds of the probate exception described in *Markham*. We therefore need not consider in this case whether there exists any uncodified probate exception to federal bankruptcy jurisdiction under § 1334."). The *Marshall* Court nonetheless clarified the parameters of the exception (to the extent the exception even exists):

> [W]e comprehend the 'interference' language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311–12. Following *Marshall*, the Fifth Circuit has held that "the probate exception only bars a federal district court from "(1) probating or annulling a will or (2) seeking to reach a *res* in

custody of a state court by endeavoring to dispose of such property." *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013).

In the case at bar, this Court is neither probating nor annulling a will. There is no state probate court (in either Texas or Florida) that has custody of the Debtor's probate assets: no one who is named as an executor in the questionable myriad wills of the Debtor has ever probated the will [Finding of Fact No. 7], and therefore there is no pending probate proceeding at this time. Indeed, because no one named as an executor in any of the Debtor's numerous wills has had the gumption to probate any of these wills, it is highly likely that none of these individuals will ever initiate a probate proceeding. Thus, it is this Court, and only this Court, that has had custody of the probate assets. Under these circumstances, and given the narrow parameters of the probate exception recently articulated in *Marshall* and *Curtis*, the probate exception does not divest this Court of jurisdiction; in fact, this Court has the responsibility of adjudicating whether assets from the Debtor's probate estate can be used to pay the Applicant to the extent allowed by applicable law. *See Seiden*, 195 F.2d at 901. As in *Seiden*, this "court of equity will . . . administer the state law with even-handed justice." *See id.* at 903.

### b. Does this Court have the constitutional authority to enter a final order on the Application for Family Allowance?

Here, because the Application for Family Allowance asserts a right to the claimed allowances against both the Debtor's probate estate and the Debtor's bankruptcy estate, this Court must determine both whether it has constitutional authority to enter a final order on the claim against the Debtor's bankruptcy estate, and whether it has constitutional authority to enter a final order on the claim against the Debtor's probate estate.

#### i) This Court has constitutional authority to enter a final order on the Application's claim against the Debtor's bankruptcy estate.

For the same reasons this Court has constitutional authority to enter a final order on the POC Objection, *see* Section B.i. *supra*, this Court concludes it has constitutional authority to enter a final order on the Application for Family Allowance to the extent that it asserts a claim against the Debtor's bankruptcy estate. Determining whether the Application's claim against the bankruptcy estate is allowable is a "core" proceeding under 28 U.S.C. § 157(b)(2)(B)("allowance or disallowance of claims against the estate . . ."). Furthermore, *Stern* itself establishes Section 157(b)(2)(B) proceedings as quintessentially within a bankruptcy court's constitutional authority, such that the question of whether a bankruptcy court has constitutional authority over other proceedings may depend on whether they "would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618.

#### ii) This Court does not have constitutional authority to enter a final order on the Application's claim against the Debtor's probate estate.

By contrast, to the extent the Application asserts a claim against the Debtor's probate estate, it is not part of the bankruptcy claims allowance process. Therefore, determination of whether this Court has constitutional authority to enter a final order over the Applicant's claim against the Debtor's probate estate requires a closer look at the limits of bankruptcy courts' constitutional authority.

The debate over the extent of bankruptcy courts' constitutional authority to enter final judgments and orders has a storied past. Before the Bankruptcy Reform Act of 1978, bankruptcy referees could enter final judgments and orders on "matters within the traditional 'summary jurisdiction' of bankruptcy courts," that is, "claims involving 'property in the actual or constructive possession of the [bankruptcy] court.' *Executive Benefits Ins. Agency v. Arkison*,

134 S. Ct. 2165, 2170 (2014) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 53 (1982)). "Proceedings to augment the bankruptcy estate," by contrast, had to be heard in district court unless the parties consented to adjudication in bankruptcy court. *Id.* The Bankruptcy Reform Act of 1978, which enacted today's Bankruptcy Code, attempted to expand the jurisdiction of bankruptcy judges by vesting bankruptcy courts with all the "powers of a court of equity, law, and admiralty" over "all civil proceedings arising under title 11 or arising in or *related to* cases under title 11" except that they "may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." *Marathon*, 458 U.S. at 55, 85 (emphasis in original) (quoting 28 U.S.C. §§ 1471(c) & 1481 (1976 ed., Supp. IV)). In *Marathon*, the Supreme Court held that the 1978 Act's broad new jurisdictional grant violated the "general principle of independent adjudication commanded by Art[icle] III" of the Constitution. *Id.* at 76. The *Marathon* court refined an exception to this general principle known as the "public-rights doctrine," under which Article I courts may adjudicate matters "that historically could have been determined exclusively by" "the executive or legislative departments." *Id.* at 68. The Supreme Court elaborated that:

> [A] matter of public rights must at a minimum arise between the government and others. In contrast, the liability of one individual to another under the law as defined, is a matter of private rights. Our precedents clearly establish that only controversies in the former category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination.

*Id.* at 69–70 (internal quotations omitted).

While bankruptcy courts might have constitutional authority to enter final orders on the "restructuring of debtor-creditor relations" in bankruptcy, which "may well be a public right," the *Marathon* court held that Article III courts could not delegate their constitutional duty to adjudicate "state-created private rights." *Id.* at 71.

Congress responded to *Marathon* by enacting 28 U.S.C. § 157, which distinguishes between "core" and "related to" bankruptcy proceedings, and provides that bankruptcy courts have constitutional authority to enter final orders and judgments on the former, but can only make recommendations to district courts on the latter. *Executive Benefits*, 134 S. Ct. at 2171. In practice, the new scheme operated similarly to the traditional plenary jurisdiction scheme of pre-1978, until the Supreme Court issued *Stern v. Marshall* in 2011. 131 S. Ct. 2594 (2011). In *Stern*, the Supreme Court held that bankruptcy courts do not necessarily have constitutional authority to enter a final order on a matter simply because it is listed as "core" under Section 157. *Id.* at 2601. In fact, according to the Supreme Court, the bankruptcy court did not have constitutional authority to enter a final judgment on the matter at issue in *Stern*, a core proceeding under Section 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." *Stern*, 131 S. Ct. at 2608. *Stern* clarified that the question of whether a dispute in a bankruptcy case is sufficiently a matter of public right to be finally adjudicated in bankruptcy court depends on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. In *Stern*, the Supreme Court held that the debtor's counterclaim (for tortious interference) was: 1) "a state law action independent of the federal bankruptcy law" and 2) was "not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611. Therefore, the bankruptcy court did not have constitutional authority to issue a final judgment on the counterclaim. *Id.*

Since *Stern*, the Fifth Circuit has provided some guidance on which proceedings "would necessarily be resolved in the claims allowance." *See In re Frazin*, 732 F.3d 313 (5th Cir. 2013) *cert. denied*, 134 S. Ct. 1770 (U.S. 2014). *Frazin* involved attorneys' fee applications and the debtor's counterclaims for malpractice, breach of fiduciary duty, and violations of the Texas

Deceptive Trade Practices Act (the DTPA). *Id.* at 319–20. The Fifth Circuit found that in determining the validity of the fee application, the bankruptcy court necessarily had to decide the "nature," "extent," and "value" of the attorneys' services, and therefore the validity of the malpractice claims. *Id.* at 320. Thus, the bankruptcy court had constitutional authority to enter a final judgment on the malpractice claims. *Id.* at 321. The Fifth Circuit characterized the breach of fiduciary duty claim similarly as "a claim that the bankruptcy court must have and did resolve in deciding whether to grant the Attorneys' fee applications." *Id.* at 322. By contrast, the DTPA claim required the bankruptcy court to make several legal determinations that were not necessary to resolution of the fee application, including whether the complaint was a disguised malpractice action, which is not actionable under the DTPA. *Id.* at 323. Therefore, the Fifth Circuit held that the bankruptcy court did not have constitutional authority to issue a final order on the DTPA claim. *Id.*

Thus, to determine whether this Court has constitutional authority to enter a final order on the Applicant's claim against the Debtor's probate estate, the Court must ask: (1) whether the dispute is a "core" proceeding under the statute that authorizes this Court to enter a final order?; and (2) Even if the dispute is "core" under the statute, is it the type of core proceeding on which *Stern* prohibits bankruptcy courts from entering a final order?

### 1. The Applicant's claim against the Debtor's probate estate is not a "core" proceeding.

The statutory scheme created by Congress in 28 U.S.C. § 157 divides all proceedings within bankruptcy court jurisdiction into "two categories: 'core' and 'non-core' proceedings." *Executive Benefits*, 134 S. Ct. at 2171. The statute defines core proceedings as "those that arise in a bankruptcy case or under Title 11," and then provides a list of examples. *Stern*, 131 S. Ct. at 2605. "Non-core" proceedings, by contrast, are those that are "otherwise related to a case

31

under title 11." *Executive Benefits*, 134 S. Ct. at 2172.  Thus, under Section 157, if a proceeding is not "core," but is one over which the bankruptcy court has jurisdiction, it is necessarily "related to" the bankruptcy.  Pursuant to the statute, a bankruptcy court may only enter final orders on core proceedings; for non-core proceedings, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court."  28 U.S.C. § 157(c)(1).

Here, the Applicant's claim against the Debtor's probate estate does not fit into any of the categories enumerated in Section 157(b)(2).  The closest category into which the Applicant's claim could fit would be Section 157(b)(2)(O) "other proceedings affecting the . . . adjustment of the debtor-creditor . . . relationship," because the Applicant is simultaneously asserting a position as a creditor of the bankruptcy estate.  However, this Court has determined that the Applicant is not a creditor of the bankruptcy estate.  Moreover, the determination of whether the Applicant is a creditor of the bankruptcy estate is *not* affected by whether she has a valid claim against the Debtor's probate estate.  Therefore, this Court concludes that the proceeding involving the Applicant's claim against the probate estate does not affect the debtor-creditor relationship.

Moreover, the Applicant's claim did not otherwise "arise under" or "arise in" the Debtor's bankruptcy case.  Indeed, the Applicant's claim against the probate estate is wholly based on state law and seeks assets that are not part of the bankruptcy estate.

For all of these reasons, this Court concludes that the Applicant's claim against the Debtor's probate estate is not a core proceeding.  Consequently, under 28 U.S.C. § 157(c)(1), the undersigned bankruptcy judge will not enter a final order as to the Applicant's claim against the Debtor's probate estate, but will instead issue proposed findings of fact and conclusions of law to

the District Court, together with a proposed order that is consistent with the findings and conclusions.[10]

      **2.  Even if the Applicant's claim against the Debtor's probate estate were a "core" proceeding, this Court would not have constitutional authority under *Stern* to enter a final order on the Applicant's claim against the probate estate.**

Alternatively, even if the Applicant's claim against the Debtor's probate estate were a "core" proceeding over which this Court had statutory authority to enter a final order, this Court would not have constitutional authority under *Stern* to enter a final order.

The Applicant's claim against the Debtor's probate estate, like the counterclaim in *Stern* or the DTPA claim in *Frazin*, is a "state law action independent of the federal bankruptcy law"; therefore, this Court does not have constitutional authority over it as an action that "stems from the bankruptcy itself"—in contrast to the Applicant's claim against the Debtor's bankruptcy estate.

Consequently, it is necessary to consider whether the Applicant's claim against the probate estate is "necessarily resolvable" by a ruling on the Applicant's claim against the bankruptcy estate. This Court concludes that it is not. As with the DTPA claims in *Frazin*, the resolution of the Applicant's claim against the probate estate would require several legal determinations that are not necessary to resolve the Applicant's claim against the bankruptcy estate. To determine whether the Applicant's claim against the bankruptcy estate is allowable, all this Court must determine is that bankruptcy estate assets may not be used to pay a claim that is only legally enforceable against probate estate assets. By contrast, to determine whether the Applicant's claim against the probate estate is allowable, this Court—acting in lieu of the state

---

[10]As noted in the Introduction of this Opinion, this Memorandum Opinion will be submitted to the District Court as the proposed findings of fact and conclusions of law relating to the undersigned bankruptcy judge's recommendation to the District Court for granting, in part, the relief requested by the Applicant that her claim be paid from the Debtor's probate estate.

probate court—must consider whether the Applicant has proven her eligibility for allowances under the applicable statutory probate provisions.  Acting as a state court to adjudicate solely state law matters is undoubtedly outside the realm of "public rights" encompassed by the relationship between a debtor and the federal government. *Stern*, 131 S. Ct. at 2611.  Unlike the determination of the "nature," "extent," and "value" of the attorneys' services in *Frazin*, the determination of the amount and validity of Applicant's claim under state probate law is not necessary to resolving her claim against the bankruptcy estate.  Therefore, the resolution of the Applicant's claim against the Debtor's probate estate does not fall within the "public rights" exception to the general principle articulated in *Stern* that Article III courts may only refer to bankruptcy courts for final adjudication matters that stem from the bankruptcy itself or would necessarily be resolved in bankruptcy process.  Under these circumstances, the undersigned bankruptcy judge does not have constitutional authority to enter a final order on the Application to the extent that it asserts a claim against the Debtor's probate estate, and must instead submit a recommendation to the District Court.  The undersigned judge submits his recommendation based upon the legal analysis set forth below.

    **ii.**    **Florida law applies to the Debtor's probate estate.**

In analyzing the Applicant's request for the Debtor's probate estate assets to pay her claim, this Court now must determine the applicable probate law.  The Applicant contends that Texas probate law governs; the Trustee contends that Florida probate law governs.  A choice of law inquiry is a two-step process. *In re Cyrus II P'ship*, 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008).  First, the Court must decide between federal or state choice of law rules. *Id.*  Second, the Court must locate the specific choice of law rule under federal or state law. *Id.*

Federal courts exercising diversity jurisdiction apply the law of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Fifth Circuit has not established a general rule on whether bankruptcy courts should apply federal or state choice of law principles. *In re Mirant Corp.*, 675 F.3d 530, 536 (5th Cir. 2012). The Ninth Circuit has held that bankruptcy courts are exercising federal question jurisdiction and should therefore apply federal conflict of law principles. *Lindsay v. Beneficial Reinsurance Co.*, 59 F.3d 942, 948 (9th Cir. 1995). Under federal conflict of law principles, the law of the state with the most significant contacts applies. *Vanston Bondholders Protective Comm. V. Green*, 329 U.S. 156, 162 (1946). The Fourth Circuit, however, has held that in determining the extent of a debtor's property rights, a bankruptcy court should apply conflict of law principles of the forum state—i.e. the state where the bankruptcy case is proceeding. *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 206 (4th Cir. 1988). The Fourth Circuit reasoned that:

> "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." . . . It would be anomalous to have the same property interest governed by the laws of one state in federal diversity proceedings and by the laws of another state where a federal court is sitting in bankruptcy.

*Id.* at 206 (quoting *Butner v. United States,* 440 U.S. 48, 55 (1979)). This Court finds the reasoning of the Fourth Circuit persuasive; therefore, it will apply Texas law because Texas is the state where the Debtor's Chapter 7 case is proceeding.

Under Texas law, the choice of law that applies to testamentary successions depends on whether the property at issue is real property or personal property. *Haga v. Thomas*, 409 S.W.3d 731, 736 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The Texas Supreme Court has recognized the general rule that testamentary disposition of personal property is governed by the domicile of the testator. *Crossland v. Dunham*, 135 Tex. 301, 305 (1940). With respect to real

property, conversely, "the place where the property is situated is to govern." *Haga*, 409 S.W.3d
at 736. The Fifth Circuit has explained the reasoning behind the domicile rule for personal
property, rooting it in "the general rule that personal property has no locality other than that of
the person having the same in possession, ownership, custody or control, and is subject to the
law that governs the person of the owner, both with respect to its disposition and transmission,
either by succession or the act of the party." *Seiden*, 195 F.2d at 906 (internal quotations
omitted) (Russell, J., dissenting, but on a point on which the majority expressly concurred).

The domicile rule for personalty applies to a widow's family allowance, which comes out
of the general assets of the probate estate. *See Hopkins v. Wright*, 17 Tex. 30, 39–40 (1856)
(holding that the widow's allowance could not be calculated without a determination of the
decedent's domicile, which determined which state law would apply); Restatement (Second) of
Conflict of Laws § 265 (1971) ("The forced share interest of a surviving spouse in the movables
of the deceased spouse is determined by the law that would be applied by the courts of the state
where the deceased spouse was domiciled at the time of his death."). Furthermore, the domicile
rule applies to allowances in lieu of homesteads, which by definition consist of personal property
as well. *See Moore v. Moore*, 430 S.W.2d 247, 251 (Tex. App.—Dallas 1968, writ ref'd n.r.e.)
("The family of a decedent is not entitled to an allowance in lieu of a homestead out of property
in the course of administration within the state, unless the decedent at the time of death was
domiciled in the state."). More generally, here, all of the property comprising the Debtor's
probate estate—i.e., the property exempted out of his bankruptcy estate—is personal property.
[Finding of Fact No. 12]. It is the law of the Debtor's domicile at his death that controls, and his
domicile at death was Florida. [Finding of Fact No. 7]. Therefore, applying Texas choice-of-

law principles, this Court concludes that Florida law controls the issue of the Applicant's entitlement to a family allowance and an allowance in lieu of exempt property.

### iii.    Under Florida law, the Applicant is entitled to a maximum family allowance of $18,000, and to no allowance in lieu of exempt property.

Having determined that Florida probate law applies to the Application for Family Allowance, the Court turns to the applicable provisions of the Florida Probate Code. Florida Probate Code § 732.403 governs family allowances. It is reproduced here in relevant part:

> In addition to protected homestead and statutory entitlements, if the decedent was domiciled in Florida at the time of death, the surviving spouse and the decedent's lineal heirs the decedent was supporting or was obligated to support are entitled to a reasonable allowance in money out of the estate for their maintenance during administration. The court may order this allowance to be paid as a lump sum or in periodic installments. *The allowance shall not exceed a total of $18,000.*

Fla. Stat. Ann. § 732.403 (West 2014) (emphasis added). Applying the Florida law to the Application for Family Allowance, this Court first notes that the maximum amount of an allowance the Applicant could receive is $18,000. The Applicant requests $496,080 as a family allowance for one year, based on a monthly budget of $41,340. [Findings of Fact Nos. 14 & 16]. The Applicant credibly testified to the necessity of the items on the budget: house payments, utilities, housekeeping, lawn care, extermination services, health insurance, medical expenses, groceries, household items, private school tuition, tutoring, entertainment, gym fees, clothing, pet care, and transportation. [Finding of Fact No. 16]. After considering the Applicant's testimony, and given the $18,000 ceiling imposed by Florida law, this Court finds that $18,000 is a reasonable amount for the maintenance of the Applicant and her children until the Debtor's probate estate is administered in full.[11] The Court therefore grants the Applicant's request for a

---

[11] This Court rejects the Trustee's argument that the "during administration" language of Section 732.403 means the provision cannot provide relief until "administration of the probate estate has begun." [Doc. No. 1639, p. 10]. This statutory language is directed at the purpose of the allowance and not at the timeline for disbursement. The Court interprets the purpose of supporting the family "during administration" as equivalent to supporting the family before

family allowance, but only to the extent of $18,000, as this amount is the maximum allowed by

Florida law regardless of the standard of living to which the Applicant and her three minor

children were accustomed prior to the Debtor's death.

To address the Applicant's request for a $45,000 allowance in lieu of homestead and a

$30,000 allowance in lieu of exempt personal property, this Court looks to the applicable Florida

law on exempt property available to a decedent's surviving family.  Florida Statute 732.402

provides, in relevant part, that:

> (1) If a decedent was domiciled in this state at the time of death, the surviving
> spouse, or, if there is no surviving spouse, the children of the decedent shall have
> the right to a share of the estate of the decedent as provided in this section, to be
> designated "exempt property."
> (2) Exempt property shall consist of:
> (a) Household furniture, furnishings, and appliances in the decedent's usual place
> of abode up to a net value of $20,000 as of the date of death.
> (b) Two motor vehicles . . .
> (c) All qualified tuition programs authorized by s. 529 of the Internal Revenue
> Code of 1986 . . .
> (d) All benefits paid pursuant to s. 112.1915 [death benefits for teachers and
> school administrators].

Fla. Stat. Ann. § 732.402 (West 2014).  In contrast to Texas law, there is no provision of Florida

law that provides for allowances "in lieu of" tangible exempt property—i.e. cash allowances in

lieu of real property (such as a homestead) or personal property (such as vehicles or furniture).

Therefore, the Applicant's requests for allowances in lieu of homestead and in lieu of exempt

personal property are denied.

---

the ultimate conclusion of probate proceedings.  This interpretation is supported by the Florida courts, which have
held that family allowances should be disbursed as quickly as possible.  *In re Gilbert's Estate*, 36 So.2d 213, 216
(Fla. 1948) ("The purpose of the [family allowance] [i]s to provide for the widow and dependents . . . until they
might receive their share of the estate); *In re Anderson's Estate*, 149 So. 2d 65, 67 (Fla. Dist. Ct. App. 1963) ("The
purpose of [a family allowance] is to provide immediate and expedient relief in order to meet daily necessaries until
such time as a final settlement or award can be determined and effectuated."); *Levine v. Feuer*, 152 So. 2d 784, 787
(Fla. Dist. Ct. App. 1963) ("A petition for family allowance is in the nature of an emergency application . . . .  As
such, it must be disposed of expeditiously and without prolonged litigation.").  Furthermore, a contrary holding
would ignore the Fifth Circuit's mandate that bankruptcy courts must compensate for the delay bankruptcy causes in
probate proceedings by granting family allowances when necessary.  *See Seiden*, 195 F.2d at 901.

## V.   CONCLUSION

This Court's acceptance of the Applicant's argument that it has jurisdiction over this dispute is a pyrrhic victory. The Applicant requests $571,080 [Finding of Fact No. 14], but this Court must entirely disallow all of her claims against the Debtor's bankruptcy estate and can only recommend awarding her the paltry sum of $18,000 from the Debtor's probate estate—the maximum allowable amount under Florida law. The Court is not enamored with this result, as the Applicant has undergone several years of hostile divorce proceedings with the Debtor while raising three minor children. [Finding of Fact No. 2]. But, this Court will not disregard the applicable Florida statute. The Florida Legislature has passed a statute that unambiguously places a ceiling of $18,000 on the family allowance, and provides for no allowance in lieu of homestead or exempt personal property; and this Court cannot "use its remedial powers to circumvent the intent of the legislature." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). The only consolation that this Court can take in issuing this harsh ruling is that the Applicant has recently remarried, and hopefully her new husband can assist her, both emotionally and financially, in raising her children and leading a more peaceful life herself.

This Court will issue two orders consistent with this Memorandum Opinion. One order will be a *final order*, entered on the docket that: (1) sustains in its entirety the POC Objection; and (2) denies that portion of the Application requesting that the Applicant's claims be paid with assets of the Debtor's Chapter 7 estate. Thus, this final order will bar any use of assets of the Debtor's bankruptcy estate to pay any of the claims. The second order will be a *proposed order* to the District Court recommending that the portion of the Application requesting that the claims

be paid with assets of the probate estate be granted in part and denied in part: namely, that the

Applicant receive payment from the Debtor's probate estate, but only to the extent of $18,000.

Signed this 17th day of October, 2014.

Jeff Bohm
Chief United States Bankruptcy Judge